UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA S,[1] | ) | CIVIL ACTION NO. 4:22-CV-823 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.    INTRODUCTION

Angela S. ("Plaintiff"), an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before the undersigned Magistrate Judge upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 7).

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

Plaintiff alleges that the ALJ's analysis of her symptoms, and her ability to maintain regular work attendance, is not adequately explained. We agree. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case will be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND & PROCEDURAL HISTORY

On March 14, 2018, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15; Doc. 10-2, p. 16).  In this application, Plaintiff alleged she became disabled on March 1, 2017, when she was fifty-two years old, due to the following conditions: degenerative disc disease, gastroparesis, arthritis, high blood pressure, cardiomyopathy, and diabetes type 2. (Admin. Tr. 300; Doc. 10-6, p. 12). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (Admin. Tr. 317; Doc. 10-6, p. 29). She asserts that her difficulties sitting, standing, and walking, coupled with her inability to maintain regular work attendance due to chronic pain, make it impossible for her to work.

Plaintiff is a high school graduate. (Admin. Tr. 301; Doc. 10-6, p. 13). Before the onset of her impairments, Plaintiff worked as a cashier at Walmart for almost thirty years. (Admin. Tr. 23; Doc. 10-2, p. 24). When Plaintiff applied for benefits in March 2017, Plaintiff was on short term disability due to stomach pain.

On November 13, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 10-2, p. 16). On November 30, 2018, Plaintiff requested an administrative hearing. *Id.*

In January 2019, Plaintiff returned to work. On September 12, 2019, Administrative Law Judge Lawrence J. Neary (the "ALJ") held a brief hearing, which was continued to afford Plaintiff time to retain a representative. *Id.* Two months later, in November 2019, Plaintiff stopped working, primarily because her stomach pain made it impossible to maintain regular attendance. She also asserts that her pain significantly restricted her ability to sit, stand, and walk.

On May 25, 2021, Plaintiff, assisted by her counsel, appeared and testified during a telephone hearing before the same ALJ. (Admin. Tr. 15; Doc. 10-2, p. 16). On August 23, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 24; Doc. 10-2, p. 25). On August 27, 2021, Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 249; Doc. 10-4, p. 142). Plaintiff submitted new evidence, in the form of a letter from her spouse, that

was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 7; Doc. 10-2, pp. 8-9).

On March 24, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 10-2, p. 2).

On May 24, 2022, Plaintiff filed a complaint in the district court seeking judicial review. (Doc. 1).

On July 15, 2022, the Commissioner filed an answer. (Doc. 9). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 9, ¶ 5). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Docs. 10, 11).

Plaintiff's Brief (Doc. 12) and the Commissioner's Brief (Doc. 15) have been filed. Plaintiff did not file a reply. This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal standards relevant to our review. Therefore, we will discuss the limited scope of this Court's review of an ALJ decision, the five-step sequential evaluation process used to adjudicate claims at the administrative level, and the guidelines for the evaluation of a claimant's symptoms.

**A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT**

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[5] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] In determining if the Commissioner's decision is supported by

---

[2] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[3] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may

consider any evidence that was in the record that was made before the ALJ.[7]

The Supreme Court has underscored the limited scope of district court review

in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the

---

[7] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

substantial-evidence standard to the deferential clearly-erroneous standard).[8]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett* [*v. Comm'r of Soc. Sec.*], we held that an ALJ must clearly set forth the reasons for his decision. [220 F.3d 112, 119 (3d Cir. 2000)]. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere

---

[8] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

**B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[14]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[15] Under this process, the ALJ must

---

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[12] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).
[13] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).
[14] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).
[15] 20 C.F.R. § 404.1520(a).

sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[16]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[17] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[18]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[19] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that

---

[16] 20 C.F.R. § 404.1520(a)(4).

[17] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[18] 20 C.F.R. § 404.1545(a)(2).

[19] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

jobs exist in significant number in the national economy that the claimant could perform.[20]

## C.   GUIDELINES FOR AN ALJ'S SYMPTOM EVALUATION

The Commissioner's regulations direct that limitations caused by a claimant's symptoms should be incorporated in the RFC assessment to the extent that those symptoms and limitations are consistent with the "medical" and "other" evidence of record.[21] This is a two-step process. First, considering medical evidence, the ALJ must decide whether a claimant's medically determinable impairments could reasonably be expected to cause the symptoms alleged. Second, considering medical and other evidence relevant to the factors articulated in 20 C.F.R. § 404.1529(c)(3),

---

[20] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

[21] 20 C.F.R. § 404.1529. In this context, "medical" evidence is objective evidence is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).

"Other" evidence includes: statements a claimant made to medical or other sources, and to the ALJ about the frequency and duration of symptoms, location of symptoms, the ability to perform daily activities; information about symptoms recorded by medical sources such as onset, descriptions of symptoms (to compare to the claimant's other statements), precipitating and aggravating factors, and the success or failure of various treatments; and information from non-medical sources' observations (to compare how consistent those observations are with the claimant's statements). 20 C.F.R. § 404.1529(c)(3).

an ALJ must decide the extent to which those symptoms limit the claimant's ability to work.[22]

When considering the medical and other evidence at the second step of this symptom evaluation, the ALJ must evaluate the following factors, where relevant: daily activities; location, duration, frequency, and intensity of pain and other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication; treatment, other than medication, received for relief of pain; any other measures used to relieve pain (e.g., rest, heat, ice, etc.); and any other factors concerning a claimant's limitations and restrictions due to pain or other symptoms.[23] A factor is "relevant" where there is information

---

[22] The Social Security Administration recognizes that, although medical evidence is a useful indicator to assist an ALJ in making a reasonable conclusion about the effect a symptom might have on a claimant's ability to work, sometimes symptoms result in a greater degree of limitation than can be shown by medical evidence alone. 20 C.F.R. § 404.1529(c)(2)-(3). Although an ALJ could properly support a decision granting benefits with objective evidence alone, an ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the [claimant]." SSR 16-3p, 2017 WL 5180304, at *5-6. Therefore, in a decision where a claimant's allegations about the degree of his or her impairment are found "not entirely consistent" with the record, an ALJ is required to consider both "medical" and "other" evidence.

[23] 20 C.F.R. § 404.1529(c)(3).

on that topic in the evidence of record.[24] An ALJ is required to "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in [the claimant's] record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions."[25]

## IV.   DISCUSSION

In her statement of errors, Plaintiff asserts:

(1)    "The ALJ failed to account for the 'total limiting effects' of Plaintiff's impairments and improperly excluded limitations, contrary to 20 C.F.R. §§ 404.1545 and 404.1529."

(Doc. 12, p. 3).[26]

Based on our review of Plaintiff's brief, she appears to be raising the following issues:

(1)    The ALJ did not adequately explain how he concluded that the alleged sitting, standing and walking limitations were not consistent with the medical and other evidence of record.

---

[24] SSR 16-3p, 2017 WL 5180304, at *8. ("If there is no information in the evidence of record regarding one of the factors, [the ALJ] will not discuss that specific factor in the determination or decision because it is not relevant to the case.").

[25] *Id.*

[26] This Court's Local Rule 83.40.4 provides that Plaintiff's brief must include, in numbered paragraphs, "the specific errors committed at the administrative level which entitle Plaintiff to relief." L.R. 83.40.4(b). "A general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient." *Id.*

(2)     The ALJ did not adequately explain how he concluded that the alleged attendance limitation was not consistent with the medical and other evidence of record.

We will begin our analysis by summarizing the ALJ's decision. Then will address each of Plaintiff's arguments.

## A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his August 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through June 30, 2024. (Admin. Tr. 17; Doc. 10-2, p. 18). Then, Plaintiff's application was evaluated at steps one through four of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did engage in substantial gainful activity after her alleged onset date (March 1, 2017) from January 2019 through mid-November 2019. *Id.* The ALJ evaluated Plaintiff's claim during the twelve month periods during which Plaintiff did not engage in substantial gainful activity (March 1, 2017, through January 2019, and mid-November 2019 through August 23, 2021). *Id.*

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity, status post L4-L5 laminectomy and multilevel degenerative disc disease, status post gastric bypass with adhesions, history of cardiomyopathy, and diabetes. (Admin. Tr. 18; Doc. 10-

2, p. 19). The ALJ also identified the following medically determinable non-severe impairments: hypertension, hyperlipidemia, vitamin B and vitamin D deficiencies, glucocorticoid deficiency (inadequate cortisol production), fatty liver disease, and hyperparathyroidism. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18-19; Doc. 10-2, pp. 19-20).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except with:

> no climbing of ladders, ropes or scaffolds, and all other postural activities limited to occasionally and with no exposure to hazards such as moving machinery or heights.

(Admin. Tr. 19-23; Doc. 10-2, pp. 20-24).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in her past relevant work as a cashier as it is generally performed in the national economy. (Admin. Tr. 23-24; Doc. 10-2, pp. 24-25).

The ALJ did not evaluate Plaintiff's application at step five because Plaintiff could return to her past relevant work.

### B.   EVALUATION OF BACK PAIN, NECK PAIN, AND ABILITY TO SIT, STAND, AND WALK

Plaintiff alleges that she has debilitating back and neck pain. She asserts that, as a result of this pain, she is unable to sit for more than thirty minutes at one time, unable to stand for more than thirty minutes at one time, and unable to walk for more than forty-five minutes at one time. The ALJ did not credit these limitations, and Plaintiff contends that the ALJ's analysis in this regard is inadequate because: the ALJ failed to discuss isolated clinical findings documenting muscle spasm, decreased range of motion, irregular gait, and positive straight leg raising tests; and, the ALJ did not adequately explain why the sitting, standing, and walking limitations were not consistent with the record. The Commissioner disagrees.

The ALJ provided the following discussion of Plaintiff's back and neck pain in his decision:

> She continued reporting lower back pain in October 2017, ibuprofen was not helping, and the claimant would like to go back to taking Percocet. Treatment records from November 2017 note lower back pain with a history of previous spinal surgery. The claimant reported that her back pain did not improve post surgery although she did have improving radiating leg pain. An X-ray showed lumbar degenerative disc disease and evidence of a previous laminectomy. When examined, the claimant had paraspinal musculoskeletal spasms and tenderness, she walked with a nonantalgic gait, she had a full range of motion of her hips, knees, and ankles, full motor strength, and equal deep tendon reflexes (Exhibit 3F). A lumbar MRI from January 2018 showed no significant stenosis according to the claimant's orthopedist; there were

mild degenerative changes of the lumbar spine and degenerative changes at several disc levels (Exhibit 12F/9, 11-12).

. . . .

Other medical issues include lumbar degenerative disc disease, cervical degenerative disc disease, and there are some references to neuropathy, which the undersigned considered under diabetes. When examined in October 2018, straight leg raises were negative, she had normal strength and normal muscle tone and a limited range of motion (Exhibit 22F). Exhibits 30F and 35F reference neuropathy in her feet. Although present, the record does not establish that this or other impairments limit standing and walking more than what is noted in the above residual functional capacity. A cervical MRI from January 2020 showed a history of cervical fusion surgery and mild changes at some cervical levels (Exhibit 18E/126) while Exhibit 18E/133 notes that the claimant's arm pain seems to have resolved. She saw a neurosurgeon who felt there was nothing going on that was surgically amenable. She has another cervical MRI in April 2021, and Dr. Patel noted some disc bulges and severe stenosis (Exhibit 37F).

(Admin. Tr. 20, 22; Doc. 10-2, pp. 21, 23).

## 1. The ALJ's Failure to Discuss Isolated Clinical Findings Does Not Require Remand

Plaintiff argues that the ALJ's decision omits objective evidence documenting tenderness, muscle spasm, decreased range of motion, gait disturbance, and positive straight leg raising tests, favorable to her claim.[27] She contends that, because the ALJ ignored relevant evidence that is favorable to her claim, remand is required.

---

[27] She cites to: a November 3, 2017 examination documenting paraspinal musculature spasming and tenderness, (Admin. Tr. 561; Doc. 11, p. 26); a November 10, 2017 examination documenting a decreased range of motion in Plaintiff's lumbar

In response, the Commissioner argues:

[W]ith respect to the specific findings that, Plaintiff suggests, the ALJ ignored, she is wrong to so argue. For example, although Plaintiff contends that the ALJ ignored an examination where she was observed with a shuffling gait and two positive straight leg raise tests (Pl.'s Br. at 13), these one-off findings pale in comparison to the overwhelming record (more than a mere scintilla of evidence) documenting that Plaintiff consistently denied issues with walking and examination findings showed that she had a normal and steady gait and normal musculoskeletal and spinal findings (*see, e.g.*, Tr. 444, 526, 563, 880, 942, 1024, 1312, 1062, 1619, 1726, 1730, 1736, 1743, 1746, 1748, 1749, 1753, 1764, 1766, 1787, 1790, 1793, 1799).

(Doc. 15, pp. 28-29).

---

spine, (Admin. Tr. 673; Doc. 11, p. 136); a January 18, 2018 record documenting paraspinal musculature spasming and tenderness, (Admin. Tr. 880; Doc. 11, p. 343); an August 6, 2018 treatment record documenting lumbar tenderness and a positive straight leg raise bilaterally, (Admin. Tr. 1026; Doc. 11, p. 489); an October 12, 2018 examination documenting midline tenderness in the lumbar spine, (Admin. Tr. 1080; Doc. 11, p. 543); a March 9, 2019 emergency department record documenting thoracic and lumbar tenderness, (Admin. Tr. 1225; Doc. 11, p. 689); a November 5, 2019 record documenting that Plaintiff was "antalgic on lumbar flexion and extension and a positive straight leg raise at 70 degrees on the left, (Admin. Tr. 1324; Doc. 11-1, p. 15); a December 2019 examination documenting that Plaintiff walked with a shuffling gait, (Admin. Tr. 1732; Doc. 11-3, p. 127); a September 2, 2020 examination documenting that Plaintiff walked with a shuffling gait, (Admin. Tr. 1777; Doc. 11-3, p. 172); and an October 2, 2020 examination documenting that Plaintiff walked with a limping gait, (Admin. Tr. 1780; Doc. 11-3, p. 174).

There is no dispute that the ALJ did not discuss every record that appears in the over 1,800-page transcript. The ALJ has no obligation to do so.[28] To hold otherwise would impose an unreasonable and impractical burden on the ALJ. Nonetheless, there is an expectation that the ALJ "consider all pertinent medical and non-medical evidence and 'explain [any] conciliations and rejections.'"[29] Even assuming that we were to find that the ALJ did not meet his responsibilities because he did not mention the isolated treatment records documenting pain, spasm, abnormal gait, decreased range of motion, and other abnormalities, we are not persuaded that remand is required based on this error alone.

The Commissioner correctly observes that our review in Social Security cases is limited to the question of whether substantial evidence supports the ALJ's conclusion. (Doc. 15, p. 27) (citing *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record

---

[28] *Hurr v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

[29] *Burnett*, 220 F.3d at 122 (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.")).

provides substantial support for that decision.")). It is not whether there is some evidence in the record that *could* support a contrary result. Nonetheless, we will recommend remand based on Plaintiff's other arguments because several aspects of the ALJ's symptom evaluation are not adequately explained.

### 2. The ALJ Did Not Adequately Explain Why He Rejected the Sitting, Standing, and Walking Limitations

Plaintiff argues that the ALJ did not discuss certain "other" evidence pertinent to his analysis of the relevant 20 C.F.R. § 404.1529(c)(3) factors. Specifically, she argues that the ALJ did not discuss or analyze: Plaintiff's statements about her daily activities; the consistency of Plaintiff's reports of pain and physical limitation with those documented in her treatment records; or the types of treatment Plaintiff has tried to relieve her pain without success.

In response, the Commissioner argues:

Numerous courts have explained that an ALJ is not required to document specific findings regarding each of the section 1529 factors. *See, e.g., Ladd v. Astrue*, No. 12-4553, 2014 WL 2011638, at *8 and n.2 (E.D. Pa. May 16, 2014) ("[N]either this policy statement [SSR 96-7p], nor § 404.1529(c)(3) (the governing regulation), mandates a specific finding as to each of the seven factors listed in § 404.1529(c)(3)(i)-(vi)."); *Heeman v. Colvin*, No. 2:13-cv-3607-TMC, 2015 WL 5474679, at *11 (D.S.C. Sept. 16, 2015) ("There is no requirement that the ALJ state specific findings on each and every [Section 404.1529(c)] factor."); *Wolfe v. Colvin*, No. 3:14-cv-4, 2015 WL 401013, at *4 (N.D. W. Va. Jan. 28, 2015); *Epperson v. Astrue*, No. 2:11-cv-12-D, 2012 WL 3862717, at *4 (E.D.N.C. Sept. 5, 2012).

(Doc. 15, p. 32). The Commissioner also contends that the ALJ specifically considered the "other" evidence relevant to the 20 C.F.R. § 404.1529(c) factors throughout his analysis. (Doc. 15, pp. 32-37).

The Commissioner is correct that the ALJ need not explicitly address each 20 C.F.R. § 404.1529(c)(3) factor. However, Plaintiff does not argue that the ALJ is required to address every factor. Rather, she asserts that the ALJ is required to provide more than a summary of evidence and conclusory statement to support his conclusion that Plaintiff's alleged sitting, standing and walking limitations are inconsistent with the medical and other evidence of record. This principle is underscored in some of the cases the Commissioner cited in her brief.

For example, the Commissioner is correct that in *Ladd v. Astrue*, the Court held that an ALJ is not required to address every factor in 20 C.F.R. § 404.1529.[30] However, the ALJ's analysis of the claimant's testimony in that case involved a thorough explanation for the ALJ's conclusion that the claimant's statements about his visual hallucinations and inability to tolerate crowds were not consistent with the record. That explanation was reproduced as follows in the Court's opinion:

> I find the claimant only partially credible.... He testified that he last had
> visual hallucinations in February; however, the last time he reported

---

[30] *Ladd v. Astrue*, Civ No. 12-4553, 2014 WL 2011638, at *8 (E.D. Pa. May 16, 2014).

visual hallucinations was in October 2009. Treatment records in February 2010 noted no hallucinations and he reported that he has not heard voices. The claimant testified that he does not like crowds and mainly stays at home. However, the medical records show that in April 2010 he went to the movies twice and in March 2010 he reported that it was getting easier to go to the store (Exhibit B–11F). He testified that he never goes to family activities, but in December 2009 he reported that he was able to enjoy himself at the family Christmas gathering (Exhibit B–11F). He also testified to difficulty with concentration and finishing tasks, but he has not reported any problems following a story line when going to the movies and he plays video games with no reported problems (Exhibit B–11F).[31]

The ALJ in *Ladd* clearly explained that the claimant's statements were not consistent with his activities or with statements he made to physicians. Unlike the ALJ in *Ladd*, the ALJ in this case concluded that the medical evidence did not support "a greater degree of limitation" than was set out in the RFC assessment, but did not explain why. The type of explanation provided in *Ladd* is absent from this decision.

Under SSR 16-3p the ALJ is obligated to "consider other evidence to evaluate" the relevant factors *and* "discuss the factors pertinent to the evidence of record."[32] It also requires that the ALJ explain how his evaluation of Plaintiff's symptoms led to his conclusion.[33] The discussion need not be comprehensive, and "in most cases a sentence or short paragraph would probably suffice."[34] The

---

[31] *Id.* at 7.

[32] SSR 16-3p, 2017 WL 5180304, at *8.

[33] *Id.*

[34] *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

explanation provided in this case is limited to a short summary of objective evidence and the conclusory statement that the "record does not establish that this or other impairments limit standing and walking more than what is noted in the above residual functional capacity." It falls short of what is required under SSR 16-3p, and is not enough for this Court to conduct meaningful review of the ALJ's findings.

Accordingly, we are compelled to remand this matter for further proceedings.

### C.   EVALUATION OF STOMACH PAIN & ABILITY TO MAINTAIN ATTENDANCE

At step one of the sequential evaluation process, the ALJ concluded that Plaintiff's resumption of work from January 2019 through November 2019 did not qualify as an unsuccessful work attempt. (Admin. Tr. 17; Doc. 10-2, p. 18). In the RFC section of the decision, the ALJ wrote:

> As noted above, she returned to work in January 2019 and earned $36,000 in 2019. She testified that she took time off during this time frame and the record supports her testimony that she had a tube placed in her stomach. This occurred in March 2019 and she was off work for this care. She subsequently developed a site infection in this area and needed some time off work for this (Exhibits 26F and 30F). However, *she does not allege nor does the record support a 30 day break in work between January 2019 and her last day of work in November 2019.*

(Admin. Tr. 21; Doc. 10-2, p. 22) (emphasis added).

Plaintiff alleges that, due to her stomach pain, she would not be able to maintain regular attendance within customary tolerances. Plaintiff brought this

Page 22 of 25

limitation to the ALJ's attention as one of the primary limitations impacting her ability to work. Plaintiff also testified that in November 2019 she missed approximately three days of work over a period of two weeks due to stomach pain. (Admin. Tr. 50; Doc. 10-2, p. 51). If she continued to be absent at that rate, she would miss six days per month. The VE testified that this level of absenteeism exceeds the threshold of what all employers would tolerate. (Admin. Tr. 65; Doc. 10-2, p. 64) (testifying that three or more days of unscheduled absences or late arrivals per month would not be tolerated in competitive employment).

Plaintiff also asserts that the medical evidence of record demonstrates she was admitted to the hospital on numerous occasions. She asserts that these hospital admissions were not evaluated in the context of the *attendance* limitation alleged.[35]

---

[35] Plaintiff reports she was hospitalized: August 21, 2018 through August 25, 2018 (four day admission for gastritis), (Admin. Tr. 928; Doc. 11, p. 391); September 4, 2018 through September 7, 2018 (three day admission for abdominal pain, was diagnosed with acute hepatitis), (Admin. Tr. 952; Doc. 11, p. 415); October 2, 3018 through October 8, 2018 (six day admission for sepsis and abdominal pain), (Admin. Tr. 1542; Doc. 11-2, p. 67); February 27, 2019 (emergency room visit due to abdominal pain), (Admin. Tr. 1238; Doc. 11, p. 701); March 9, 2019 through March 17, 2019 (seven day admission for biliary obstruction and abdominal pain), (Admin. Tr. 1214; Doc. 11, p. 677); June 9, 2019 through June 10, 2019 (one day admission with abdominal pain) (Admin. Tr. 1144; Doc. 11, p. 607); December 27, 2019 through January 1, 2020 (five day admission for abdominal pain), (Admin. Tr. 1580; Doc. 11-2, p. 105); March 6, 2021 through March 7, 2021 (one day admission due to abdominal pain and hypomagnesemia) (Admin. Tr. 1617; Doc. 11-3, p. 12); and May 10, 2021 through May 14, 2021 (four day admission for abdominal distention), (Admin. Tr. 1823; Doc. 11-4, p. 25).

Based on these records, it appears Plaintiff spent 13 days in the hospital in 2018, 13 days in the hospital in 2019, 1 day in the hospital in 2020, and 4 days in the hospital between January and May 2021.[36]

In response, the Commissioner argues that "[t]he ALJ recognized that Plaintiff required some time off work during that period, but noted that the record did not support a 30 day break in work." (Doc. 15, p. 25) (citing Admin. Tr. 21; Doc. 10-2, p. 22).

Plaintiff's argument is persuasive. The ALJ's evaluation of whether Plaintiff was absent from work for less than thirty days does not adequately address the alleged limitation of excessive absenteeism. Thus, the ALJ did not explain how he concluded that no attendance limitation was present. Plaintiff's hospital records suggest that she had at least significant, if not work preclusive, difficulty maintaining regular attendance due to her poor health. Given that this limitation was urged by

---

[36] The record was held open to provide Plaintiff with an opportunity to submit her attendance records from Walmart to further develop this issue. (Admin. Tr. 40-41; Doc. 10-2, p. 41-42). Although Plaintiff's counsel made multiple requests for the records in the month following the administrative hearing, Walmart's legal department never responded. (Admin. Tr. 537; Doc. 10-6, p. 249). Plaintiff requested that the record be closed and that a decision be made on the existing file. *Id.*

Plaintiff and acknowledged by the ALJ during the hearing, the ALJ's failure to address it in the decision undermines his conclusion and requires remand.

## V.    CONCLUSION

Accordingly, Plaintiff's request for relief will be GRANTED as follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in Angela S.'s favor.

(4)    An appropriate order will be issued.

Date: September 27, 2023                     BY THE COURT

                                             *s/William I. Arbuckle*
                                             William I. Arbuckle
                                             U.S. Magistrate Judge